# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

KENDALL McCOOK and VIRGINIA
McCOOK,

        Plaintiffs,

vs.                                       Civ. No. 99-1362 WWD/DJS ACE

SPRINGER SCHOOL DISTRICT, SPRINGER
BOARD OF EDUCATION, FREDDIE CARDENAS,
DAVID GUTIERREZ, CARLOS CRAIG, RAY
McFALL and ANDRES EBELL, in their individual
and official capacities,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

      THIS MATTER comes before the Court upon Defendant Cardenas' Motion for Summary

Judgment Based on Qualified Immunity, filed November 30, 2000 **[docket # 72]**.  The individual

school board Defendants have filed a  Motion for Summary Judgment based on Qualified

Immunity, which will be addressed separately.   This lawsuit is brought under 42 U.S.C. § 1983

alleging violations of the First and Fourteenth Amendments.  Plaintiffs contend the Defendants

retaliated against them by engaging in a prolonged course of adverse actions in response to their

criticisms, prior lawsuits  and allegations of wrongdoing against the Springer School District.

Defendant ("Cardenas") attributes their actions to legitimate responses to Kendall McCook's

("Kendall") behavior at athletic events and school activities.

      The second amended complaint contains three Counts:[1] (1) Retaliation for the Exercise of

First Amendment Rights, (2) Deprivation of Right to Assemble and Right of Association and (3)

_____

[1]  Plaintiffs' claim alleging deprivation of due process was dismissed.  <u>See</u> docket # 106.

Deprivation of Equal Protection.   Having considered all the pleadings, memoranda and other materials submitted by the parties, as well as the applicable law, I find that Defendant's motion is well-taken and will be granted.

## BACKGROUND

Plaintiffs describe the following as the alleged retaliatory acts taken by Defendant Cardenas:  suspending Jake from the Springer Municipal School; assaulting Kendall when he and Jake entered school property on October 9, 1998; filing criminal charges against Kendall and his son after receiving a Notice of Tort Claims Act; seeking the expulsion of Jake McCook; excluding Plaintiffs from entering school property at any time, including attending Board meetings and voting in Board elections, and threatening Plaintiffs with civil and criminal prosecution if they entered the Springer property.   The questions to be resolved for purposes of this motion are: (1) whether Cardenas' actions toward the McCooks sprang from a retaliatory motive against Plaintiffs because they had engaged in speech which is protected under the First Amendment; (2) whether Cardenas' action in excluding Plaintiffs from Springer School District property violated their First Amendment right to assemble and right of association; and (3) whether Cardenas violated Plaintiffs' right to equal protection in banning them from school property.

### *Objections to Plaintiffs' Exhibits*

Defendant has objected to Plaintiffs' Exhibits 8, 14 and 13 as lacking foundation, being unauthenticated, or containing hearsay, and requests that the Court strike the exhibits as impermissible under Rule 56 standards.   Defendant also objects to numerous exhibits submitted by Plaintiffs as part of their response to the Board's summary judgment motion, but also referenced in their present response.  See Reply at 12, n.2.   While I would prefer to have as much

2

supporting evidence in front of me before dealing with the merits of this motion, I note that Plaintiffs have not supplemented the pleadings to notify the Court that this material was obtained through discovery requests or is otherwise properly submitted, nor have they sought leave of Court to file a surreply.   Defendant's objections are therefore sustained, and the Court will not consider Exhibits 8, 13 and 14 which are attached to Plaintiffs' Response to the present motion. The Court also will not consider the following exhibits which were filed as a separate attachment to Plaintiffs' response to the Board members' summary judgment motion, listed by general category where possible:  Ex. 7; Exs. 16, 17, 19, 20, 23, 27, 28, 31, 36, 54 (minutes from meetings); Exs. 18, 2, 29, 30, 44 (newspaper articles); Ex. 21 (letter dated 11/26/97 requesting teaching job); Ex. 34 (same as Ex. 14 from response to present motion);  Exs. 38, 49 (letters dated 10/9/98 and 10/13/98); Ex. 47 (school policy); Ex. 63 (excerpt from school policy); Exs. 50, 53, 57 (pleadings from other lawsuits); Ex. 59 (agenda from 10/29/98 Board meeting re: Jake's expulsion); Ex. 58 (unsworn statement re: 10/9/98 incident); Ex. 59 (transcript of expulsion hearing); Ex. 61 (portion of videotaped Board meeting).[2]

**Factual Background**

A cursory review of the pleadings and exhibits in this case suggests a long-standing animosity and feud-like tension between the parties.   Kendall McCook ("Kendall") was a frequent and  vocal critic of the Springer School system and school board of a small New Mexico town.   Events began to spin out of control and into this lawsuit when Superintendent Cardenas

---

[2]  Defendants state that Plaintiffs have refused to produce Exs. 34 and 61 in response to discovery requests.  Further, they contend that the videotaped excerpt from a meeting that was almost two hours long is improper, individuals shown on the tape are not identified, nor is the date of the meeting established.  See Defts' Reply to Bd's Sum.J. Motion, at 6 n.4.

was informed by the school's computer support person, Chris Sandlin, that he had found

inappropriate material on the school's lap top computer which had been checked out to Jake

McCook.[3]  The downloaded material consisted of sound clips from a "South Park" cartoon,

containing sound bites of obscenities and sexually explicit language.  Ex. 1 at 42; Ex. 2 at 17-18.[4]

On October 8, 1998, Cardenas called Jake into his office and suspended him for five days after

Jake admitted downloading the material.  On Jake's request, Virginia McCook came to the school

and met with Cardenas.  Both Jake and his mother understood that the suspension would take

effect immediately and that Jake would not be able to attend the Homecoming pep rally the

following day, on October 9th.

On October 9th, Kendall and his son Jake went to the high school.  The parties dispute the

purpose of the McCook's presence on campus, although the dispute is of little import.  According

to Defendant, Kendall and Jake attempted to attend the Homecoming pep rally.  Plaintiffs state

that their purpose was to speak to Cardenas about allowing Jake to participate in the rally.  See

Undisputed Material Fact ("UMF")13 & Resp. to UMF 13.[5]  Plaintiffs' position was that Jake

had a right to be at the pep rally, and that their lawyer had told them that Jake was illegally

---

[3]  For the sake of easier narrative, the recitation of these facts omits allegedly disputed issues, which will be addressed under another section, below.

[4]  There were, e.g., were sounds of someone farting or vomiting.  Another sound clip said, "Mommy, someone is being a dildo" followed by "I know a certain kitty who's sleeping with Mommy tonight."  Jake admitted downloading this material, but denied downloading any material from the Playboy website.

[5]  In his deposition, Kendall McCook stated that he went to the attendance office, but not to Cardenas' office.  Resp. to Bd's Sum. J. Based on Qual. Immunity ("Bd's QI Resp"), Ex. 14 at 142.  Jake stated that after the two of them left the parking lot, they "walked into the lobby" at which point Cardenas saw them and approached.  Ex. G at 41-43.

suspended.  At any rate, both versions are consistent with the fact that Kendall and Jake had

entered school property for the purpose of getting Jake into the rally.

Cardenas arrived on the scene, accompanied by the school principal, Mr. Gurule and a

staff member.  He asked Kendall McCook and Jake to leave.  The McCooks refused.  Kendall and

Cardenas started arguing while Jake attempted to get into the pep rally.   Cardenas contends that

Kendall initiated the physical confrontation, throwing his hat to the ground and saying that he

would "take them all on."   Kendall claims that Cardenas blocked him as he was trying to walk into

the gym, causing him to push into Cardenas.  He admits that he said "Which one of you sons a

bitches wants to take me on?" - but did so because he felt threatened.  UMF 17 & Resp. to UMF

17.  Although the extent of the physical force applied by either Cardenas or Kendall is disputed,[6]

it is not disputed that Jake got involved in the fracas by getting in between Cardenas and his father

in an attempt to break Cardenas' hold on Kendall McCook.  By the time the police arrived, the

incident between Cardenas and Kendall had ended.

That same day, Cardenas wrote a letter to the Springer Police Department forbidding

Kendall, Virginia and Jake McCook from attending any school functions or entering onto school

---

[6]  Cardenas says that he grabbed Kendall McCook in order to restrain him.  Ex. 60, Bd's QI Resp.  He also states that Kendall tried to get loose from Cardenas' grasp by "clawing at" and "smashing" him against a side walk railing, and as support for this statement relies on Kendall's deposition statements regarding his personal journal entries.  Ex. A at 154-156 & attachment.  Curiously, this handwritten journal entry has also been submitted by Plaintiffs as one of the exhibits in response to this summary judgment motion, and to which Defendant has objected (Ex. 8, see, above, "Objections to Exhibits").

Kendall's response is that his journal was written with "metaphoric speech" and claims that Cardenas has represented that the only contact he had with Kendall on October 9, 1998 was when he stepped in front of him to block access to the gym.  Resp. to UMF 19.  However, the evidence Plaintiffs use to support this statement, Ex. 60, Bd's QI Resp., supports Defendant's version of what took place.

property.  Ex. I.   Five days later, Cardenas sent a letter to the Plaintiffs informing then that Jake's suspension was over, but that Kendall "was not permitted on campus at any time for any reason until further notice."  Ex.D (attachment 46).  Although this last letter did not include Virginia in the exclusion, and while the Springer Chief of Police understood that Virginia was not barred from entering school property, Virginia said that she was not notified that the original letter lifted the ban as to her presence on campus.  Ex. 42, Bd's QI Resp. at 61.   She has voted in School Board elections (all of which are held on Springer school property) twice since October 8, 1998, including the 1999 election when Jake accompanied her.

On October 21, 1998, Cardenas made a recommendation to the school board that Jake be expelled.  The result of the hearing, held about a week later, was Jake's expulsion from Spring High School.  The Board's decision was based on the October 9th incident which the Board saw as a "willful violation of school rules and state law, undertaken in defiance of the prior discipline." Ex. A (attachment K).   Following his expulsion, Jake entered the Springer campus to obtain information about home schooling from the school counselor.  After conferring with the school district's general counsel, Frank Albetta, Cardenas asked Albetta to draft and send a letter to the McCooks' attorney dated November 10, 1998, requesting that both Kendall and Jake stay off Springer School property because Cardenas feared another violent incident.  Bd's QI Resp, Ex. 12.

Since his expulsion from Springer high school, Jake has attended school in the Maxwell School District.  He and his parents were finally allowed to attend events on Springer school property in the past year.

**DISCUSSION**

In Count I, Plaintiffs allege that Cardenas' actions described above were taken in retaliation for speaking out in criticism of the School Board and filing lawsuits against the board and administrators.

## COUNT I  - FIRST AMENDMENT RETALIATION

After a careful analysis of Plaintiffs' retaliation claim, I have determined that it would abort at certain threshold levels of inquiry.  However, assuming at the end of each juncture that the claim passes muster, it eventually fails on the basis that no genuine dispute of material fact exists for Plaintiffs' claim of constitutionally impermissible motive or conduct.

### Whether Plaintiff has alleged a First Amendment Right

Cardenas has asserted a qualified immunity defense, which shifts the burden to Plaintiffs to show first that Defendant's conduct violated the law and then that the relevant law was clearly established when the alleged violation occurred.  Clanton v. Cooper, 129 F.3d 1147 (10th Cir.1997) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).

First Amendment retaliation cases are generally brought within an employment context. The McCooks are non-employees and non-applicants for employment, and allege that a non-employer Defendant retaliated against them on the basis of their engaging in protected conduct. Plaintiffs have found two Tenth Circuit cases that depart from a strict employment context, one decided in 2000, and another unpublished and decided in 1999: Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000) (plaintiff alleging he wasn't hired after a drug task force agent told plaintiff's prospective employer that plaintiff had testified as an expert for murder defendant); and Lackey v. County of Bernalillo, No. 97-2265, 1999 WL 2461 (10th Cir. N.M.) (plaintiff sued county for retaliation in form of malicious prosecution for protected speech which informed his

neighbors of a convicted child molester's presence in the neighborhood).[7]   While the fact scenario in Lackey lies outside the employment arena, Worrell is still premised on retaliation in employment, except that one of the defendants is a non-employer.

Defendant offers Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999) for its argument that Plaintiffs have not sufficiently alleged a constitutional right.   Lovern does indeed appear to be analogous to the facts of this case, with the exception of the son's involvement.   Michael Lovern was a non-custodial school parent who had been a vocal critic of school officials and had made allegations to the school board that school officials were misusing public funds.   When he was barred from the school grounds because of his continuing verbal abuse and threatening behavior towards school officials, Lovern claimed the school defendants had violated his first amendment rights.   The court found that Lovern had failed to allege a "substantial federal claim" in part because the school had not sought to affect plaintiff's conduct except on school property and because the defendants' actions involved the "safety of those who utilize school property."   Id at 655.   The circuit court agreed with the trial court that the case was a "monument to what ought not to be in a federal court."   Id at 656.

Plaintiffs dodge any discussion of Lovern.   However, I will assume that Plaintiffs have sufficiently asserted a general right to be protected against retaliation under the First Amendment.

*Legal Standards*

Of considerable interest is the standard proffered by each of the parties for the qualified immunity determination in this claim.   Defendant relies on the familiar standard which applies the

---

[7]  Plaintiffs also offer Mesa v. White, 197 F.3d 1041 (10th Cir. 1999), which is strictly a restriction of free speech case, and thus much less analogous to the other two cases.

balancing inquiry of <u>Pickering v. Board of Educ</u>., 391 U.S. 563, 568 (1968):  whether speech addressed matters of public concern, and if so, whether the protected nature of his speech was sufficiently clear that  a defendant should have known that the defendant's interests would not survive a balancing inquiry.  <u>See</u> <u>Patrick v. Miller</u>, 953 F.2d 1240, 1246 (10th Cir. 1992).  If the inquiry survives this part of the analysis, then it continues by looking to see whether the evidence raises a genuine issue of material fact as to whether the speech was a substantial or motivating factor in the defendant's decision to terminate the plaintiff.    Further, in the employment context, if the plaintiff establishes that speech was such a factor, the employer may demonstrate that it would have reached the same employment decision in the absence of the constitutionally protected activity.  <u>See</u> <u>McEvoy v. Shoemaker</u>, 882 F.2d 463, 465 (10th Cir. 1989).

Plaintiffs rely on the standard set out in the recent <u>Worrell</u> case for non-employer defendants as an alternative to the <u>Pickering</u> balancing and which asks (1) whether the applicant was engaged in constitutionally protected activity; (2) whether the defendant's actions caused the applicant to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) whether the defendant's adverse action was substantially motivated as a response to the applicant's exercise of constitutionally protected conduct. <u>Worrell</u>, 219 F.3d at 1212.  This second approach eliminates the balancing inquiry as well as the liability escape clause employers can use.   Both approaches start with an examination of the speech alleged to be the protected activity.

**Protected speech**

The mere fact that Kendall McCook criticized school administrators and board members, or that he and his wife filed lawsuits against the school system, does not automatically label the

activities as "protected" or of "public concern."  Speech is of public concern, and therefore entitled to First Amendment protection, if it is "of interest to the community, whether for social, political, other reasons." Connick v. Meyers, 461 U.S. 138, 146 (1983); Lytle v. City of Haysville, 138 F.3d 857, 863 (10th Cir.1998). "It is not enough that the subject matter be of public concern; the content of the expression must also be of public concern."  Witham v. Baptist Health Care of Okla, Inc., et al., 98 F.3d 581  (10th Cir. 1996).

As an initial matter, Plaintiffs argue that their speech need not be of public concern in order to be protected under the First Amendment because Plaintiffs are neither government employees nor government contractors.  While the Pickering balancing affords employers a freer hand in regulating speech in the workplace, Plaintiffs offer no legal basis for the proposition that the speech of private citizens need not touch on matters of public concern to trigger constitutional protection in a First Amendment retaliation case.[8]  Worrell, despite the fact that it eliminates the balancing test for non-employer defendants, still requires that the speech be "protected."  219 F.3d at 1212, 1215 (noting that circuit decisions have held that the right to testify truthfully is "clearly established").  Lackey also assumes that the requirement stands.  1999 WL 2461, **3 (court noted that parties did not dispute that plaintiff was engaged in protected speech and cited case wherein similar speech was considered speech "on matter of public concern").  Moreover, any case law which can be read to abandon the requirement that protected speech be of public concern would not have been clearly established at the time the alleged violations occurred.

---

[8] Under Plaintiffs' urging, *all* speech would be protected.  Even claims based on restriction of speech require an examination of not only the type and scope of the restriction, but also the nature and content of the speech before a determination can be made on whether that speech is constitutionally protected.  See  Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46 (1983);  Mesa v. White, 197 F.3d at 1044.

*Plaintiffs' Additional Material Facts*

Plaintiffs present "Additional Material Facts" ("ADF") # 55-# 64 as representative of protected speech but which Defendant characterizes as immaterial and based on inadmissible evidence.[9]  I agree with Defendant that these facts are based on evidence that may not be properly before me (see above, "Objections to Exhibits").   Nevertheless, the conduct these additional facts describe can be categorized as efforts to redress personal grievances (ADF ## 58, 60); and criticism and disagreement over the Board's personnel decisions and school disciplinary policies (ADF ## 56, 57, 62, 63, 64).  These comments do not rise to the level or speech which "discloses any evidence of corruption, impropriety, or other malfeasance on the part of [public] officials." Schuler v. City of Boulder, et al., 1999 WL 691653 (10th Cir.(Colo.)).  To be protected speech, the expression must "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." Wilson,732 F.2d at 768.  Comments that are best described as name-calling are not protected speech as they are of dubious benefit to the public.  ADF #59 (stating the school was "in shambles"), ADF # 60 (calling the Board "stupid and uninformed"); ADF # 64 (calling Board members "tyrants and fascists" when the Board decided to fire John Fontes as high school principal, whose contract the Board had just renewed).

Even if these additional facts supplied by Plaintiffs were properly before the Court, and were also considered protected speech, at the end of the inquiry they have little or no usefulness to the retaliation claim.   The alleged protected activity in these "additional material facts" occurred anywhere from four to twenty months before the earliest of the allegedly adverse

---

[9]  The exceptions are for ADF ## 55 and 56, which refer to exhibits (Bd's QI Resp. Exs. 8 & 14), to which Defendant has not objected.

actions, Jake's suspension.  See Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997)

(three-month period, standing alone, is insufficient to establish causation).

*Events of June, July and October 1998*

In June, July, and October 1998, Kendall and Virginia McCook engaged in activities

which they characterize as protected under the First Amendment and which led Cardenas to take

retaliatory action.  I agree with Defendant that these activities do not constitute speech which

regard matters of public concern and are therefore not entitled to First Amendment protection.  In

June 1998, Plaintiffs sued school board member Carlos Craig over the award of a scholarship to

the Board President's son when their son Jake was not selected as the recipient.  In October 1998,

Kendall McCook filed a charge of race discrimination against the School Board alleging that a

much less qualified Hispanic was hired as an English teacher over him.[10]  Because these lawsuits

were filed to vindicate personal concerns, they do not qualify as protected speech.  See Rice v.

Ohio Dep't of Transp, 887 F.2d 716, 720 (6th Cir. 1989), vacated on other grounds, 497 U.S.

1001 (1990); see also Workman v. Jordan, 32 F.3d 475, 483 (10th Cir. 1994), cert. denied, 514

U.S. 1015 (1995) (employees' testimony at a personnel grievance proceeding to address his

personnel conflict is not a matter of public concern).

In July 1998, Plaintiffs sent a letter to the state board of education complaining of past

decisions of the Springer Municipal School Board.  Ex. N.  Cardenas was not superintendent

during the time any of these decisions were made.  I find that none of the complaints made or

---

[10]  Plaintiffs had included a claim for failure to hire based on reverse discrimination in  the
First Amended Complaint (Count III).  However, it was omitted in the Second Amended
Complaint.  Defendant Cardenas started his job at Superintendent in July 1998, well after the facts
occurred which gave rise to that claim.  Ex. D at 14.

issues raised in this letter rise to the required level of public concern:  disagreement with staffing decisions, including resignations or hiring decisions made by the Board (items 1 to 5, 7, 9, 11, 13 and 16); disagreement with decisions on and work hours of staff member (item 6); disagreement with school disciplinary policies (item 17); complaints about losing students who dropped out of school or attend other area schools (item 8); complaints regarding school programs and curriculum (items 10, 12, 18).

Plaintiffs' accusation that the Board violated the Open Meetings Act appears at first blush to qualify as protected speech (items 14, 15) but qualifies more as hyperbole after looking at the listed subsections underneath these items:  criticizing the Board's selection of meeting times, changing of meeting times (thereby "confusing the public").  Similarly, item 7, which accuses the Board of hiring teachers "without advertising vacancies or conducting a search for quality educators" seems closer to speech which concerns "individual personnel disputes or internal policies," not considered protected speech under the First Amendment, rather than speech which relates to matters of public concern.  See Curtis v. Oklahoma City Pub.  Schools Bd. of Educ.,147 F.3d 1200, 1212 (10th Cir.1998); Bunger v. University of Okla. Bd. of Regents, 95 F.3d 987, 992 (10th Cir.1996) ("The First Amendment does not require public universities to subject internal structural arrangements and administrative procedures to public scrutiny and debate").

On October 5,1998, Virginia McCook wrote to Cardenas complaining about the high school principal's children participating in athletic events in alleged violation of the New Mexico Activities Association ("NMAA") eligibility rules.   Ex. H, (attachment B).   The "general public interest" this letter may generate "is not the equivalent of public concern for First Amendment purposes."   Koch v. City of Hutchinson, 847 F.2d 1436, 1445 (10th Cir.1988).  Although I

conclude that Plaintiffs have not engaged in protected speech for purposes of a First Amendment retaliation claim, I will assume for purposes of this motion that some of the above speech is protected.

**Clearly Established**

Plaintiffs' burden relative to Cardenas' qualified immunity defense continues in that they must demonstrate that the relevant law was clearly established when the alleged violation occurred. Clanton v. Cooper, 129 F.3d 1147 (10th Cir.1997) (citing Siegert, 500 U.S. at 232). Plaintiffs' First Amendment retaliation claim aborts at this threshold as well. In order for the law to be clearly established, "there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." Murrell v. Sch. Distr.No.1, Denver Colo., et al., 186 F.3d 1238 (10th Cir.1999) (citation omitted). While the case law need not contain the very action in question to have been held unlawful, nevertheless the unlawfulness must be apparent in the light of preexisting law. See Foote v. Spiegel et al., 118 F.3d 1416, 1424 (10th Cir. 1997)(citation omitted). Cases having too broad a level of generality may "render unavailable the defense of qualified immunity." See Melton v. City of Okla. City, 879 F.2d 706, 729 (10th Cir. 1989), cert. den, 502 U.S. 906 (1992) (citing Anderson v. Creighton, 483 U.S. 107 S. Ct. 635 (1987)).

Plaintiffs cite to either employment cases (Fraternal Order of Police of Hobart Lodge # 121, Inc. v. Hobart, 864 F.2d 551 (7th Cir. 1988)), or a few non-employment retaliation cases from other circuits. (e.g., Zilich v. Longo, 34 F.3d 359 (6th Cir. 1994); Duran v. City of Douglas, 904 F.2d 1372 (9th Cir. 1990)). These cases do not constitute case law that is either "on point" or "weight of authority" from other circuits. Plaintiffs also rely on cases involving restriction of

free speech (e.g., Griswold v. Connecticut, 381 U.S. 479 (1965); Rosenblatt v. Baer, 383 U.S. 75 (1996); Summum v. Callaghan, 130 F.3d 906 (10th Cir. 1997)) to support a  First Amendment retaliation claim which requires a finding that a plaintiff engaged in speech which is of public concern (Powell v. Gallemore, 992 F.2d 1088 (10th Cir. 1993); Conway v. Smith, 853 F.2d 789 (10th Cir. 1988); Erickson v. Board of County Com'rs, 801 F. Supp. 414 (D.Col. 1992)).   I do not find this theoretical hybrid to satisfy the requirements of "clearly established" law.   The two cases that would seem to provide some guidance on how to treat non-employer defendants, Mesa (non-retaliation), Worrell and Lackey (unpublished), were, as Defendant points out, decided after the allegedly unconstitutional events took place.

Given the non-employment context of the McCooks' case as well as the educational backdrop against which Cardenas' decisions were made, I do not find that Plaintiffs have demonstrated that "clearly established" law existed which would have made it sufficiently clear to Cardenas that he was violating Plaintiffs' First Amendment rights.  See Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1278 (10th Cir.1998) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Where a plaintiff makes the required two-part showing of an alleged violation of clearly established law, the defendant may still prevail in a motion for summary judgment by showing that no material issues of fact remain as to whether defendant's actions were "objectively reasonable" in light of the law and the information he or she possessed at the time. Hinton v. City of Elwood, Kan., 997 F.2d 774, 779 (10th Cir. 1993); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Thus, even assuming Plaintiffs have met their burden, I find that Defendant would prevail on the merits, a discussion of which follows.

15

**Whether Defendants are Entitled to Qualified Immunity**

Referring to the factual scenario set out above, I find that Cardenas' actions toward Plaintiffs were objectively reasonable. Cardenas suspended Jake for violating the school's computer policy. Jake admitted downloading sexually inappropriate material onto the computer. Ex. G at 15; UMF # 8. Although Jake knew that the suspension included denial of permission to attend Homecoming activities, he went to school the following day, accompanied by his father, for the purpose of attending the event. UMF ## 12, 13. Cardenas asked them to leave the campus. They refused to leave and instead, Kendall demanded that his son be admitted to Homecoming. UMF # 15. Their refusal to leave caused a disturbance in the area where students and parents were attending a rally in the gym. Cardenas' attempts to physically escort Kendall out of the gym were reasonable. Subsequent events leading to Plaintiffs' and Jake's exclusion from campus, as well as Jake's expulsion from school, flowed from this incident.

Cardenas defends his actions in part on the fact that his decision in handling the exclusion of the McCooks from school property was based on the advice of the Board's attorney, Frank Albetta. Cardenas sought Albetta's advice following the Board's decision to expel Jake. Whether Plaintiffs are correct in arguing that Mr. Albetta was not legally accurate in advising Cardenas that certain state statutes gave him legal authority to bar the McCooks from campus is not critical to the central issue of retaliation. In fact, while Cardenas' reliance on Albetta's advice does not satisfy his burden of acting reasonably, it is some evidence of Cardenas' acting in good faith, and certainly not with retaliatory intent. See e.g., Gilbrook v. City of Westminster, et al, 177 F.3d 839, 870 (9th Cir. 1999). And, while Plaintiffs may disagree with the Board's expulsion decision, Resp. to UMF 33, it did contain findings that Kendall and Jake had engaged in

16

violence.  Ex. A, attachment K  (items 10, 12, 13, 14).[11]  I thus find Cardenas' actions toward

Plaintiffs, including his reliance on Albetta's advice, to have been reasonable.  Plaintiffs' exclusion

from Springer school property as well as Jake's expulsion were consequences of Kendall and Jake

McCook's disregard for Cardenas' administrative authority to take measures where necessary for

the safety and well-being of other students, parents and staff.

*Retaliatory Motive*

        Because retaliatory motive is an essential element of Plaintiffs' substantive claim, the

inquiry does not end because Cardenas has carried his burden of showing objective

reasonableness.  In the end, Plaintiffs maintain the ultimate burden of establishing a culpable

subjective state of mind of the part of Cardenas through specific and concrete evidence.  See Gehl

Group v. Koby, 63 F.3d 1528, 1535 (10th Cir. 1995).

        Plaintiffs' case of retaliation fails because it is premised on a combination of chronology of

events and conjecture.   See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997)

(plaintiff's mere conjecture that the employer's reason is pretext for discrimination is insufficient

to avoid summary judgment).   For one thing, mere temporal proximity of a protected activity to

the alleged adverse action is insufficient, without more, to establish retaliatory motive.   See

_____

        [11]  Plaintiffs "dispute" on this issue amounts to a splitting of hairs.  Resp. to UMF 33.
Whether the Board found that Jake had engaged in violence toward Cardenas or Cardenas *and*
the principal is not material to whether Cardenas had a reasonable basis for recommending Jake's
expulsion.  See Ex.A. (attachment K) (Board's findings).

        Plaintiffs challenge the statutes Albetta relied on in arguing that Cardenas did not in fact
have the legal authority to prevent Kendall McCook from entering school property.   Not only is
this argument specious, since one of the statutes at least arguably gives Cardenas that authority
(N.M.S.A. 1978 § 30-20-13(C)), but the validity of the argument does not mitigate the objective
reasonableness of Cardenas' actions.

Butler v. City of Prairie City, Kan., 172 F.3d 736, 744 (10th Cir. 1999).   Even those acts of

"protected activity" which occurred in June and July[12] nearest the earliest adverse action (Jake's

suspension) would not be close enough in time to support a prima facie case of retaliation.   See

Richmond v. ONEOK, Inc., 120 F.3d at 209 (three-month period, standing alone, is insufficient to

establish causation); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999)

(court not deciding whether adverse action that occurred a little over two months was sufficiently

close to protected activity to decide whether prima facie case had been met, since plaintiff could

not show pretext).  Further, with the exception of Virginia McCook's October 5th letter,

Cardenas was not at Springer High School for the events which gave rise to the Plaintiffs' alleged

protected activities in June, July and October.

        A dispute about a material fact is "genuine" where "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." Ingels v. Thiokol Corp., 42 F.3d 616, 620

(10th Cir. 1994)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Even

when reviewing the factual record in the light most favorable to the nonmoving party, as I am

required to do,  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241

(10th Cir.1990), I do not find that Plaintiffs have presented any dispute of facts that would defeat

summary judgment.

        Cardenas' earliest action characterized by Plaintiffs as retaliatory was Jake's suspension

over a violation of the school's computer policy.   Although it is undisputed that the school laptop

computer had been checked out to Jake, undisputed that Chris Sandlin discovered the

_____

        [12]  The exception is, of course, Virginia McCook's letter to Cardenas regarding NMAA
violations by the high school principal, which I address below.

inappropriate material while checking out the computer (Ex. F at 24: 17-25), undisputed that Sandlin testified that no one told him to check out the computer, undisputed that he found inappropriate material downloaded onto the computer when he did so, and undisputed that Jake admitted downloading this material, Plaintiffs nevertheless contend that Cardenas' action was retaliatory.

With the objective of implying that Cardenas knew about the downloaded material well before he suspended Jake, Plaintiffs toss details into their response to create inferences that only overactive imaginations would find plausible.  For example, Plaintiffs point to Sandlin's unimpressive work background before coming to Springer High School (2 and ½  years at Beals's department store in warehouse and customer sales, Ex. 2 at 7), hinting at impropriety in the way he was hired and suggesting in a roundabout way that Cardenas somehow engineered the hiring of Sandlin as well as Sandlin's discovering the material on Jake's computer-- thereby supporting Plaintiffs' position that the suspension was based on pretextual reasons.

Sandlin was interviewed two or three months prior to starting on October 5, 1998.  Ex. 2 at 9.  Cardenas started as superintendent in July 1998, at which time he was notified that Jake had been using one of the school's laptops and was instructed to get it back.  Bd's QI Resp., Ex. 1 at 13-14.   Plaintiffs contend there is a dispute of fact regarding when Cardenas actually first knew of the downloaded material, when in fact there is none.   In his deposition, Sandlin stated that he discovered the material on the computer on October 5th or 6th on his first day of work and when he first had access to the computer Jake had used, and that he spoke with Cardenas the following day.  Ex. 2, at 13, 15.   Thus, according to Plaintiffs -- even though by this time Plaintiffs had a considerable history of criticizing the school administration and Board -- Cardenas did nothing

19

about the matter until the following day, when he allegedly found out that Virginia McCook had written a letter about NMAA violations by the school principal.  However, Plaintiffs' "dispute" of fact merely distorts Defendant's statement of undisputed facts.  Sandlin first notified Cardenas about the downloaded material on October 6th, but Cardenas was unable to meet with him until the 8th, so that Cardenas did not know what was downloaded (or how the school's computer policy was violated) until the 8th.  UMF # 6; Ex. E at 2.   Sandlin's testimony is thus internally consistent with Defendant's undisputed fact.

Existence of retaliatory motive is even more untenable with regard to actions taken following Jake's suspension.  Given the sequence of events that occurred after Kendall and Jake McCook attempted to get into Homecoming, no reasonable juror would find retaliatory motive in any of Cardenas' actions -- in barring the McCooks from school functions and school property, or in recommending Jake's expulsion to the Board.  By all accounts, Kendall and Jake's unauthorized visit to the school and refusal to leave when requested[13] ended in physical confrontation during a school event at which other students and their parents were present and which provided a reasonable basis for Cardenas to fear another violent incident if Jake or Kendall appeared on school property again.   See Ex. G at 51-53; Ex. D at 78-79; Ex. A at 148-49, 152-53, 157.

Plaintiffs characterize Cardenas' letter of October 14, reiterating that Kendall McCook was not permitted on campus anymore, as retaliatory because the letter was dated on the same

---

[13]  While Kendall himself had not been barred from entering the school property at this time, he concedes that his intention in accompanying Jake was not only to ignore his son's suspension, but to fight it.

day Cardenas received notice of Plaintiffs' lawsuit under the Tort Claims Act.[14]  In an attempt to

create inferences where there are none, Plaintiffs stretch a coincidence into an improbable dispute

of fact.  The October 14th letter not only states that Jake's suspension is over (and thereby

allowed to enter school property in order to return to school), but also expressly limits exclusion

from school property to Kendall only, thereby attenuating rather than supporting Plaintiffs'

allegations of retaliatory motive.

Similarly, there is insufficient evidence to support an inference of retaliation in Virginia

McCook's exclusion from campus.  Although her name was included in the initial October 9th

letter, and she was not notified that the exclusion did not apply to her, it is conspicuously omitted

from both the October 14th and November 10th letters.  Both school officials and the Springer

Chief of Police, to whom a copy of the initial exclusion was sent, understood at the time of the

first letter that Virginia was not barred from campus.  Virginia voted in school board elections,

which are held on school property, twice since October 1998, without mishap.

In sum, I find that Plaintiffs simply have not established that their alleged protected

activity (assuming that Plaintiffs' letters, criticisms and lawsuits are protected speech) motivated

Cardenas even in part in any of his actions taken toward them or Jake.   This is not to say that a

jury might not come away with the distinct impression that both sides disliked each other.

However, dislike is not an illegal motive.  See Rakovich v. Wade, 850 F.2d 1180, 1192-93 (7th

Cir. 1987) (generic dislike is not retaliation);  see also Fisher v. Vassar College, 114 F.3d 1332,

1337 & n.3 (2d Cir. 1997)(fact that defendant's proffered reason was false does not necessarily

---

[14]  The exhibit relied on by Plaintiffs for this fact is one of the exhibits to which Defendants
have objected, Bd's QI Resp, Ex. 50.

mean that the true motive was the illegal one argued by plaintiff), <u>abrog. on other grds.</u>, <u>Reeves v. Sanderson Plumbing Products</u>, 530 U.S. 133 (2000).   Although the court views the record with all its inferences in the light most favorable to the nonmovant, the nonmovant must then go beyond the pleadings and identify specific facts showing there is a genuine issue for trial.  <u>See Langley v. Adams County, Colo.</u>, 987 F.2d 1473, 1476 (10th Cir. 1993).  Plaintiffs have not done so.  They have not shown that a genuine dispute of material fact exists which a reasonable jury would find to be evidence of retaliatory intent or unconstitutional animus by Cardenas.  Summary judgment is therefore granted to Defendant on Count I.

**COUNT II - RIGHT TO ASSEMBLE AND RIGHT OF ASSOCIATION**

Plaintiffs claim that Cardenas violated their First Amendment right to assemble and right of association when he excluded them from Springer School property because it prevented them from voting.   There is no merit to this claim, since the exclusion did *not*, in fact prevent either Plaintiff from voting.  As stated above, Virginia McCook voted in two school board elections (which are held on Springer school property) since October 1998.  She was never barred from entering the Springer campus in order to vote.  The so-called "prohibition" to which Plaintiffs refer in describing the October 9th letter which barred Kendall, Virginia and Jake from school property, <u>Resp. to UMF 40</u>, appears to have been more an oversight, in light of the understanding on the part of school officials and the police department that she was not included in the prohibition, subsequent letters that do not mention her name, and lack of any evidence that she has ever been requested to leave or otherwise prevented from coming onto school property.

This claim must fail with regard to Kendall McCook as well.  The exclusion letters did not reflect any foresight in making exceptions for Board elections, but neither do they reflect the

intention to bar Plaintiffs from voting.   Notwithstanding the fact that he was barred from coming onto school property, Kendall was permitted to vote on campus when he asked Cardenas for permission by letter.   Ex. A (attachment O); Ex. D at 81; Bd's QI Resp., Ex. 1 at 81.   As to prior Board elections, Kendall essentially barred himself from voting.   Plaintiffs do not dispute that they could have voted in person at the County Clerk's office or through absentee ballot.   UMF 42.[15] Thus, even Cardenas' refusal to allow Kendall onto Springer property to vote in Board elections would not necessarily constitute a violation of Plaintiffs' First Amendment rights.   Cardenas' letters of exclusion did not bar Plaintiffs from exercising their First Amendment right to vote. Summary judgment will be granted on Count II.

**COUNT III - DEPRIVATION OF EQUAL PROTECTION**

Plaintiffs claim that Cardenas violated their right to equal protection by banning them from entering onto any Springer School District property.   Plaintiffs do not base this claim on their belonging to a suspect group, but on the allegation that Defendant violated one of their fundamental rights, the right to vote.   United States v. Austin, 981 F.2d 1163, 1165 (10th Cir. 1992) (if a government action does not impact upon a suspect class or fundamental right, it need only be rationally related to a legitimate governmental interest).   They contend that even though they are not members of a suspect class, they may still bring a claim against Defendant as a "class of one."   See Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989) (recognizing successful equal protection claims brought by a "class of one" where plaintiff alleges that he has been intentionally treated differently from others similarly situated and that

---

[15]   Without providing any legal basis for the statement, Kendall McCook blames Defendants (the Board and Cardenas) for not giving him information concerning these alternate voting methods.   Resp. to UMF 42.

there is no rational basis for the difference in treatment) (citation omitted).

Plaintiffs have indeed asserted a violation of a fundamental right regarding the right to vote.  See City of Mobile v. Bolden, 446 U.S. 55, 76 (1980) (the constitutional right to vote is protected under the Equal Protection Clause of the Fourteenth Amendment).  They have not identified any other fundamental rights which would trigger constitutional protection, nor described who other "similarly situated" individuals are.

Plaintiffs' equal protection claim has no merit because even as a "class of one," they have not shown evidence of improper motive on Cardenas' part, or that Cardenas deliberately sought to deprive them of equal protection of the laws.  As discussed above, Cardenas' actions did not preclude them from voting even if the exclusion *had* prevented Plaintiffs from entering school property to vote in Board elections (which I find it did not).  See Washington v. Davis, 426 U.S. 229 (1976); Batson v. Kentucky, 476 U.S. 79, 93 (1986) (purposeful discrimination is an essential element of an equal protection violation); Hilton v. Wheeling, 209 F.3d 1005, 1007 (7th Cir.2000) (in claim by "class of one," plaintiff must show intent or malice) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(concurring opinion)).  Plaintiffs cannot show a dispute of fact on this claim where a reasonable jury would find that Cardenas violated their equal protection rights.

## Conclusion

Plaintiffs have not raised genuine disputes of material fact on any of their claims against Defendant Cardenas for First Amendment retaliation, for deprivation of the right to assemble and the right of association or for deprivation of equal protection.

**WHEREFORE**,

24

   **IT IS ORDERED** that Defendant Cardenas' Motion for Summary Judgment Based on Qualified Immunity **[docket # 72]** is hereby GRANTED, disposing of Plaintiffs' claims against Defendant Cardenas in their entirety.

                                          _____
                                          UNITED STATES MAGISTRATE JUDGE