IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KENDALL McCOOK and VIRGINIA
McCOOK,

      Plaintiffs,

vs.                                                 Civ. No. 99-1362 WWD/DJS ACE

SPRINGER SCHOOL DISTRICT, SPRINGER
BOARD OF EDUCATION, FREDDIE CARDENAS,
DAVID GUTIERREZ, CARLOS CRAIG, RAY
McFALL and ANDRES EBELL, in their individual
and official capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon a Motion by Defendants David Gutierrez, Carlos Craig, Ray McFall and Andres Ebell, and the Springer Municipal School Board, for Summary Judgment Based on Qualified Immunity, filed October 30, 2000 **[docket # 68]**.[1] Having considered all the pleadings, memoranda and other materials submitted by the parties, as well as the applicable law, I find that Defendants' motion is well-taken and will be granted.

## BACKGROUND

Plaintiffs allege violations of their First and Fourteenth Amendment rights under 42 U.S.C. § 1983. Plaintiffs contend that in retaliation for their criticisms, prior lawsuits and allegations of

---

[1] In addition to naming the Springer Municipal Board of Education as a defendant, Plaintiffs also sue the school Board members in their individual and official capacities. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) (action filed against a state official in his official capacity is simply another way of pleading an action against an entity of which an officer is an agent).

wrongdoing against the Springer School District, Defendants engaged in a prolonged course of adverse actions such as not hiring Kendall McCook for the 1997-98 school year, suspending and expelling their son Jake from Springer High School, and excluding Plaintiffs and their son from entering school property and from attending events on school property.  In this motion, Defendants seek the dismissal of the school Board member Defendants on the basis of qualified immunity and also on the basis that, except for Jake's expulsion from high school, the Defendants played no role in any of the alleged retaliatory acts.

The second amended complaint contains three Counts:  (1) Retaliation for the Exercise of First Amendment Rights, (2) Deprivation of Right to Assemble and Right of Association and (3) Deprivation of Equal Protection.  The claim alleging deprivation of due process was dismissed. See docket # 106.[2]

Once a defendant has adequately raised the defense of qualified immunity, the plaintiff must show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law.  Then the defendant assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute.  Butler v. City of Norman, 992 F.2d 1053, 1054 (10th Cir. 1993).

The Court has entered contemporaneously with this Memorandum Opinion and Order another Memorandum Opinion and Order in which Defendant Cardenas is granted summary judgment for all of Plaintiffs' claims (see docket # 72).  The present motion involves virtually the

---

[2] Facts which deal with Plaintiffs' due process claim, then, will not be considered in the Court's analysis of Defendants' qualified immunity.

same factual background and common legal questions. I therefore refer the parties to that Order for my findings on the threshold issues: whether Plaintiffs have alleged a constitutional claim; whether their speech should be considered "protected speech" under the First Amendment; and whether the relevant law was clearly established at the time of the underlying incidents. In that Order, I also found that Plaintiffs have not shown that a genuine dispute of material fact exists which a reasonable jury would find to be evidence of retaliatory intent or unconstitutional animus by Cardenas toward Plaintiffs on any of the alleged retaliatory conduct. I determined that Defendant Cardenas' actions did not violate Plaintiffs' right to assemble, right of association, nor did they deprive Plaintiffs of their equal protection rights.

I have also sustained Defendants' objections to certain Plaintiffs' exhibits, as noted in the Order on Defendant Cardenas' motion for summary judgment at pages two and three, which are as follows: Ex. 7; Exs. 16, 17, 19, 20, 23, 27, 28, 31, 36, 54 (minutes from meetings); Exs. 18, 2, 29, 30, 44 (newspaper articles); Ex. 21 (letter dated 11/26/97 requesting teaching job); Ex. 34 (same as Ex. 14 from response to present motion); Exs. 38, 49 (letters dated 10/9/98 and 10/13/98); Ex. 47 (school policy); Ex. 63 (excerpt from school policy); Exs. 50, 53, 57 (pleadings from other lawsuits); Ex. 59 (agenda from 10/29/98 Board meeting re: Jake's expulsion); Ex. 58 (unsworn statement re: 10/9/98 incident); Ex. 59 (transcript of expulsion hearing); Ex. 61 (portion of videotaped Board meeting).

I now turn to address those issues which are peculiar to the qualified immunity defense of the Board Defendants, starting from the assumption that Plaintiffs have alleged a viable constitutional claim, that their speech was protected and that the relevant law was clearly

established when the alleged violation occurred.[3]  Plaintiffs' list of alleged retaliatory actions include Jake McCook's suspension and expulsion, exclusion of Plaintiffs and Jake from entering school property, prohibiting the McCooks from attending Board meetings and voting in a Board election, threatening Plaintiffs with civil and criminal prosecution if they entered school property, and denying Kendall McCook employment at Springer School District in November 1997.[4]  Resp. at 24.

## I. Whether Defendants are entitled to Qualified Immunity

Plaintiffs' claims against the Board Defendants are based on personal liability as well as vague allusions to supervisory liability for Superintendent Cardenas' actions.[5]  The law in this circuit still requires that liability under § 1983 requires a showing of some personal involvement by a defendant in the constitutional violation.  Meade v. Grubbs, 841 F.2d 1512, 1527-27 (10th Cir. 1988).

In a retaliation claim, Plaintiffs have the ultimate burden to establish, through specific and

---

[3] Summary judgment for Cardenas was alternatively based on findings that Plaintiffs' speech was not protected speech for First Amendment purposes, and that the law was not clearly established at the time.  See Order on Deft. Cardenas' Mot. for Sum.J.

[4] Plaintiffs list several other instances of retaliatory conduct which are based on actions taken by Cardenas and not by any of the Board member Defendants.  These will discussed below, under supervisory liability.
In October 1998, Kendall McCook filed a charge of race discrimination with the EEOC against the Board alleging that a much less qualified Hispanic was hired as an English teacher over him.  Plaintiffs initially alleged a failure to hire claim based on reverse discrimination in the First Amended Complaint, but abandoned the claim in the Second Amended Complaint.

[5] Cardenas personally suspended Jake McCook from high school for five days because Jake had violated school computer policy  by downloading questionable material onto a laptop computer he had borrowed from the school for personal use.  He also recommended Jake's expulsion to the Board, and was responsible for the decision to bar Plaintiffs and Jake from school property.

concrete evidence, that Defendants acted on the basis of a culpable subjective state of mind.  See Gehl Group v. Koby, 63 F.3d 1528, 1535 (10th Cir. 1995).  For a First Amendment retaliation case, this subjective state of mind is shown through evidence that the adverse action was substantially motivated as a response to Plaintiffs' exercise of constitutionally protected conduct.  Even assuming that "protected speech" status is afforded to Plaintiffs' complaints about the school board and district and to the filing of their various lawsuits,[6] there is no evidence that the Board defendants were either personally involved or personally directed any of Defendant Cardenas' actions.

A. *Actions Taken By Board Member Defendants*

The school Board Defendants voted to expel Jake McCook upon Superintendent Cardenas' recommendation.  The Board's findings supporting the expulsion decision rested upon the undisputed facts in the case, starting with Jake's suspension for violating the school computer policy, continuing with an attempt by him and his father forcibly to gain entrance to the school pep rally despite the fact that he was on suspension at the time, and culminating with a physical confrontation that erupted when Kendall and Jake refused to leave campus when requested.  Kendall was restrained by Cardenas and Jake was restrained by the school custodian when he assaulted Cardenas in trying to break Cardenas' hold on his father.  See Ex. O; see also Order on Deft. Cardenas' Sum. J. Mot., at 4-5.  The "additional" facts supplied by Plaintiffs do not attenuate the undisputed facts which arise out of the background of this case and form the express basis for the Board's decision to expel Jake McCook.  These facts do not contain any evidence of

---

[6] This issue is discussed at length on pages 9 to 14 of the Order on Defendant Cardenas' summary judgment motion.

unconstitutional motive.

Plaintiffs' attempts to create a behind-the-scenes conspiracy of sorts against Plaintiffs fail. They point to certain Board members (Carlos Craig and Ray McFall) who disagreed with Kendall McCook's criticisms of the Board, and who felt that many of his actions were inappropriate. Pltffs' Add'l Facts # 75, # 76.  Plaintiffs cite to depositions of Craig and McFall for the intended effect of demonstrating that these individuals harbored a dislike for Kendall McCook's opinions and expressions of criticism directed toward the school Board and administration.   However, I find no factual support for inferences of retaliatory motive.  At most, some statements by certain Board members suggest more a dislike for what they considered to be Kendall McCook's abusive and uncivilized behavior when attending Board meetings.[7]

The Board also initiated a new practice of limiting public speech to two minutes (from five minutes) at Board meetings and requiring anyone who wanted to speak at the meetings to sign registration cards before the meetings.   Ex. E at 3:15-16; Ex. I at 66-67.[8]  However, Plaintiffs mischaracterize the record in asserting that the action was taken to limit Kendall McCook's speech or that it was selectively enforced against him.   While Defendants concede that Kendall was one of the more outspoken speakers at meetings, there is no evidence that the change was made only because of him or that it was selectively enforced.  See e.g., Ex. 8 at 13; 9-20; at 37;

---

[7] For instance, Defendant Craig stated that Kendall McCook disrupted Board meetings by his "hollering and screaming," Ex. 8 at 10:16-24;  calling Board members "stupid or ignorant," at 10: 1-5; making accusations and then walking out, not waiting for an answer or response. At 13: 8-13.  Apparently, Plaintiffs concede that the name-calling occurred.  Pltffs' Add'l Facts # 42.

[8] According to Janell Ross, a Board member but not a Defendant in this action, the Board President David Gutierrez got the idea from another school district.  Ex. 24 at 27-28.

Ex. 24 at 28: 3-20.[9]

Except for voting on Jake McCook's expulsion and the time limitations on speech at the Board meetings, the remainder of the alleged retaliatory acts are based on Defendant Cardenas' actions, which are addressed in the Order on Cardenas' summary judgment motion.  As to the above actions actually taken by the individual Board members, Plaintiffs have presented no genuine issues of material fact to preclude a grant of summary judgment to the individual Board member Defendants.

B.  *Supervisory Liability for Cardenas Actions*

Plaintiffs vaguely allege a supervisory liability against the Board members based on Cardenas' actions toward Plaintiffs in suspending Jake, in excluding Plaintiffs and Jake from Springer property and in not hiring Kendall McCook as a teacher.[10]  Supervisory liability requires some "deliberate action" by a defendant in directing the constitutional violation or occurs where the defendant-supervisor personally directed the violation or had actual knowledge of the violation *and* acquiesced in its continuance.  Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996)

---

[9]  Defendants have objected to Exhibit 61, which is an excerpt from a videotape of a school board meeting on the basis that it is not authenticated and lacks foundation.  Were the Court to consider this exhibit, however, it offers little in support for Plaintiffs' contention that Kendall McCook was "instructed" to "stop speaking" at a board meeting.  Pltffs' Statement of Mat'l Facts, ¶ 74.  Rather, it shows that an unidentified male individual thanked Plaintiff for his comments during a pause in Plaintiff's statements, Kendall informing the individual that he had five minutes to speak and wasn't finished, and the individual then telling Plaintiff to go ahead with speaking.

[10]  Plaintiffs state that the present motion "does not address the Plaintiffs' claims for supervisory liability against the . . . defendants."  Resp. at 35.  Defendants' reply brief contains a short and dismissive evaluation of Plaintiffs' claims under a supervisory liability theory, concluding that they lack the requisite "affirmative link" between the individual Defendants and the alleged violations.  Reply at 16-17.

7

(emphasis added) (citing Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992)).

At most, the evidence shows that one or more of the Board members may have been aware of the situation involving the McCooks, and that Cardenas was dealing with it. See e.g., Ex. 3 at 48, 108; Ex. 9 at 16-17. Cardenas' actions were not discussed at any of the Board meetings, nor was any Board action taken to direct or continue any of these actions towards the McCooks, including their exclusion from school property.

The Board had no role in the suspension. See, e.g., Ex. G at 97. The Board did instruct Defendant Cardenas to get the school laptop back from Jake McCook shortly before Cardenas began his job as Superintendent in July. Ex. 1 at 14. Four months later, Cardenas would meet with Jake and suspend him upon being informed that Jake had downloaded inappropriate material. The contention that the Board somehow directed or acquiesced in Cardenas' suspension by instructing Cardenas to retrieve the computer is an implausible stretch.

Plaintiffs also contend that Cardenas' specific actions in excluding the McCooks from school property was at the direction of the Board.[11] However, this contention is a misrepresentation of Cardenas' deposition testimony in which he states that he was "given his directive" that Jake, following expulsion, "was not allowed on campus for any reason." Ex. 1 at 152. At the same time, Plaintiffs concede that the Board "decided only one thing at Jake McCook's expulsion hearing: that Jake McCook be expelled from school." Resp. at 6. No discussion ever took place, and no vote was ever taken barring either Jake or his parents from campus. Cardenas' decision to do so was clearly his interpretation of the expulsion consequences.

---

[11] Although Virginia McCook was initially named in the exclusion, subsequent correspondence shows that this was an oversight. See Order on Deft. Cardenas' Sum. J. Mot. at 21.

8

Ex. E. at 66-67; Ex. F at 39; Ex. G at 48; Ex. G at 116: 1-8.   The fact that some Board members who knew about Cardenas' decision, or who later stated in depositions that they agreed with it, see, e.g., Ex. 2, at 35: 16-23, is not a sufficient basis for attaching supervisory liability to any of the Board members.[12]   See Langley v. Adams County, Colorado, 987 F.2d 1473, 1481 (10th Cir. 1993) (mere knowledge of an alleged constitutional violation, even by a supervisor, will not support § 1983 liability).

Similarly,  board member Defendants did not participate at any point in the decision not to hire Kendall McCook for a teaching position and instead transfer "Peanuts" Vigil, a teaching assistant, to the position for the remainder of that school year.[13]   It is undisputed that Board decisions to hire must be on recommendation by the Superintendent.  Ex. G at 115: 10-15; Ex. H at 27: 6-14; Ex. E at 68: 9-11.   No recommendation was made to the Board regarding Ms. Vigil's position, nor any vote taken.   Ex. F at 38: 8-18; Ex. G at 97: 22-24; Ex. H at 27: 1-6; Ex. 4 at 75-76. Plaintiffs contend that Defendants failed to follow standard operating procedure in filling this position, pointing to the language in N.M.S.A. 1978 § 22-5-4D which states that the Board has the power to "approve or disapprove the employment, termination or discharge of all employees . . . ."[14]   At the same time, Defendants offer unrebutted testimony that the action taken

---

[12] Kendall McCook's exclusion was based on events following his attempt to get Jake into Homecoming the following day.  See Order on Deft. Cardenas' Sum.J. Mot. at 20.

[13] Cardenas was not Superintendent at the time the transfer was made; thus, any claim of supervisory liability on this issue would rest on the actions of the former Superintendent, who is no longer a named party to this action.  See docket # 76.

[14] Although not expressly stated, Plaintiffs imply that Defendants failed to follow the usual procedure in order to bypass Kendall McCook's application and hire someone less qualified, as yet another retaliatory measure.

on filling the mid-year vacancy was considered an internal transfer, that such an action does not come under the statutory provision, and requires neither a recommendation by the Superintendent nor a Board vote of approval.  Ex. E at 65: 14-18; Ex. I at 62:1-4, and at 64:5-25.

Plaintiffs state that when Defendant Cardenas assumed the duties of Superintendent, he was "soliciting" school employees to document negative reports about Kendall McCook.  Pltffs' Resp. to Defts' Undisp. Facts, # 2.   Far from being evidence of retaliatory conduct,  I find this comment to be a rather hyperbolic representation of Cardenas' advice to an individual to document incidents when the individual commented on Kendall McCook's boisterous behavior at Board meetings.  Ex. 1 at 114: 7-19.

In the final analysis, Plaintiffs' claims under a supervisory liability theory fail because there is no evidence that any of the Board member Defendants personally directed or had the requisite knowledge and acquiescence to form a basis for § 1983 liability.  Because liability under this theory is premised on the unconstitutional nature of a subordinate's actions, Plaintiffs' claims must fail also because I have found that no reasonable juror would find retaliatory motive in any of Cardenas' actions.  See Order on Deft. Cardenas' Sum.J. Mot., at 20.

**II.  Liability of the School Board**

A plaintiff suing a governmental entity under § 1983 for the acts of one of its employees must prove that a municipal employee committed a constitutional violation, and that a municipal policy or custom was the moving force behind the constitutional deprivation.  See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).[15]  In this case, any action formally

---

[15]Defendants summarily assert that Plaintiffs cannot show that their rights were violated pursuant to any custom and policy.  Mem. at 18.  Plaintiffs make the initial effort of pointing out -- correctly -- that the Springer Municipal Board of Education is not entitled to a defense of

10

taken by the Board as a decision "to adopt a particular course of action," e.g., the decision to expel Jake McCook, would constitute an act of official government "policy."  See  Pembauer v. City of Cincinnati, 475 U.S. 469, 480-81 (1986) (plurality opinion), cited in Ware, 902 F.2d at 819.  I have already determined above that Plaintiffs have presented no material issues of fact to support the allegations that the Board's actions either in expelling Jake McCook or in taking measures to restrict the public's speech at Board meetings, including Kendall McCook's, were motivated by an unconstitutional animus.

The remainder of the alleged retaliatory acts were those of Defendant Cardenas.  The Board cannot be liable for actions taken by Defendant Cardenas on a respondeat superior basis. Monell, 436 U.S. at 694.  A governmental entity will be held liable for the results of decisions made by an employee only if the employee possesses "final authority" under state law to establish policy with respect to the challenged action.  See Jett v. Dallas Indep. School Dist., 491 U.S. 701, 736-38 (1989), cited in Jantz v. Muci, 976 F.2d 623, 630 (10th Cir. 1992), cert. den, 113 S.C. 2445 (1993).  However, final decision making authority may be delegated.[16]  Id.; Ware v. Unified

---

qualified immunity, then go on to cite Monell for the proposition that an entity can only be liable if the actions were taken pursuant to a custom or policy or if done by a final decisionmaker.  Resp. at 35, n.2.  However, they pursue the issue of Board liability no further, but instead continued to focus on the issue of personal liability of the individual Board member Defendants.

It is unclear whether the parties have in fact argued the question of municipal liability. While Defendants have moved for summary judgment on behalf of all school Board Defendants, including the Board itself, Defendants' remarks in their Reply suggest that the issue may not be fully briefed (e.g., reference to the "*individual* board members, "who are the movants here"") (emphasis added), and acknowledging that Attorney Albetta "could serve to bind the Board as an entity." Reply, at 15.  However, my finding that no constitutional violation occurred renders these shortcomings moot.

[16] Delegation can occur when a subordinate's decision is couched as a policy statement expressly approved by the policymaking entity, or "when the decision manifests a custom or usage

School District No. 492, 902 F.2d 815 (10th Cir.1990). Whether an official had final policymaking authority is a question of state law. Pembaur, 475 U.S. at 483.

There exists a question as to whether the Board may be liable through Cardenas' actions taken as a final policymaker based on the Board's delegation of authority – but the question turns out to be academic, for several reasons. First, Plaintiffs have not demonstrated an "affirmative link" between the policy and the alleged constitutional violation which is required in order to hold a governmental entity liable for a constitutional violation under § 1983. See City of Okla. City v. Tuttle, 471 U.S. 808, 823 (1985). As noted in the above discussion addressing supervisory liability, the evidence indicates that Cardenas' actions were sufficiently isolated from any Board input or control to preclude a finding that the Board was a moving force behind Cardenas' actions. See Board of County Comm'rs v. Brown, 520 U.S. 397, 402 (1997) (a municipality is liable only when the official policy is the "moving force" behind the injury alleged, i.e. that the municipal action was taken with the requisite degree of culpability and that "there is a direct causal link between the municipal action and deprivation of federal rights"). As also noted above, mere knowledge by some of the Board members as to what was going on with respect to the McCooks is insufficient to legally bind the Board to Cardenas' actions.

Second, it is not altogether clear whether any of the functions Cardenas exercised were delegated such that municipal liability would be triggered.[17] Although there is evidence that state

---

of which the entity must have been aware." Jantz v. Muci, 976 F.2d 623 (10th Cir. 1992), cert. den., 113 S.C. 2445 (1993) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988)).

[17] See Ware, 902 F.3d at 817 and 819 n.1 (notwithstanding that evidence could be construed to support an inference of delegation, "the identification of final decisionmakers must be done as a matter of law upon review of the relevant legal materials, including state and local

law gives the Board the power to "delegate administrative and supervisory functions *of the local school board"* to the school superintendent, N.M.S.A. 1978 § 22-5-4(C) (emphasis added), the evidence is inadequate to make a determination on whether actions over which Cardenas exercised discretionary control were in fact duties which belonged to the Springer School Board through state law but were delegated entirely to Cardenas.  See Jantz v. Muci, 976 F.2d 623, 631 (10th Cir. 1992), cert. den., 113 S.C. 2445 (1993) (an incomplete delegation of authority--i.e., the right of review is retained--will not result in municipal liability, whereas an "absolute delegation of authority may result in liability on the part of the municipality").  Nor did delegation occur where the Board was "simply going along with" Cardenas' discretionary decisions.  See Ware v. Unified School Distr. No. 492, Butler Cty, State of Kansas, 902 F.2d 815, 817 (10th Cir. 1990) (citing City of St. Louis v. Praprotnik, 487 U.S. 112, 130 (1988));[18] cmp. Flanagan v. Munger, 890 F.2d 1557 (10th Cir. 1990)(delegation occurred where government entity conceded that it had delegated final policymaking authority to a subordinate, where municipal code gave direct authority to subordinate, and where no established procedure existed by which subordinate's decisions were reviewed), cited in Ware, 902 F.2d at 819 (distinguishing from case at bar).

Finally, the question of delegation need not be answered because of previous determinations made with regard to Cardenas' actions toward the McCooks.  Board liability as an entity is ultimately premised on a finding that Cardenas' actions violated Plaintiffs'

---

positive law, as well as 'custom or usage' having the force of law").

[18]  In the Order ruling on Defendants' Motion to Dismiss Plaintiffs' municipal liability claims, I had allowed liberal construction of Plaintiffs' complaint, finding that the allegations provided "adequate notice to Defendants of the basis for their liability."  See docket # 106 at 4.  Though these allegations meet the barest threshold inquiry, they cannot withstand scrutiny under more rigorous summary judgment standards.

constitutional rights. Since I have found that no genuine issue of material fact exists to support Plaintiffs' claims that Cardenas' actions were taken with retaliatory intent, see Order on Deft Cardenas' Mot. for Sum.J., Plaintiffs' claims of municipal liability cannot stand. See Apodaca v. Rio Arriba County Sheriff's Dept., 905 F.2d 1445, 1447 (10th Cir. 1990) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)) (municipality may not be held liable where there is no underlying constitutional violation by any of its officers).[19] Thus, while actions of both Superintendent Cardenas and Attorney Albetta toward Plaintiffs could, as Defendants recognize, serve to bind the Board as an entity, they do not form the basis for liability in this case since actions taken against the Plaintiffs were not retaliatory.

Plaintiffs' claims under Counts II and III (Deprivation of Right to Assemble and Right of Association and Deprivation of Equal Protection, respectively) will also be dismissed on the basis that no reasonable juror would find that Defendant Cardenas' actions under these claims were retaliatory in nature. In Count II, Plaintiffs have not presented a dispute of fact which shows that Defendant Cardenas excluded either Plaintiff from exercising a First Amendment right to vote. In Count III, Plaintiffs have not shown evidence that Cardenas intentionally sought to deprive them

---

[19] Although the Board itself cannot claim a qualified immunity defense, it is nevertheless entitled to summary judgment where the individual officials have not violated any constitutional rights. However, if qualified immunity is granted to individual defendants on the basis that the law was clearly established, a claim against the entity may still be viable provided that the unconstitutional action was taken pursuant to custom or policy of the entity. Hinton v. City of Elwood, 997 F.2d 774, 782-83 (10th Cir. 1993) (suit against city may proceed if finding of qualified immunity is predicated upon a determination that the law was not clearly established). Although Defendants' qualified immunity in the present motion is alternatively based on the finding that the law was not clearly established at the time, the final disposition of the merits of the case negates any possibility of claims continuing against the Board alone.

of equal protection of the laws under the specific contours of that right.  See Order on Deft. Cardenas' Mot. for Sum.J.

## CONCLUSION

In sum, I find that Plaintiffs have not raised genuine disputes of material fact on any of their claims against the individual board member Defendants, nor against the Board as a governmental entity, on Counts I, II, or III.   Summary judgment will be granted to the individual Defendants on the basis of qualified immunity and to the Board because no board member Defendant violated Plaintiffs' constitutional rights.

**WHEREFORE**,

**IT IS ORDERED** that on the Motion by Defendants David Gutierrez, Carlos Craig, Ray McFall and Andres Ebell, and the Springer Municipal School Board, for Summary Judgment Based on Qualified Immunity **[docket # 68]**, summary judgment is hereby GRANTED, disposing of all claims by Plaintiffs against these Defendants.

_____
UNITED STATES MAGISTRATE JUDGE